# UNITED STATES DISTRICT COURT

for the

Southern District of California

FILED

JUL 2 3 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                   DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No.
a black Alcatel cellular telephone )
Model No. 5094Z )
IMEI: 014940006345087 )

'19 MJ 3072

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841, 846, 952, 960, 963 | Possession with intent to distribute controlled substance; Importation of a Controlled Substance; Conspiracy to commit same |

The application is based on these facts:

See attached Affidavit of Special Agent Carmen Jacobsen

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Carmen Jacobsen, Special Agent HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: July 23, 2019 @ 10:45 AM

*Judge's signature*

City and state: San Diego, CA     Hon. Peter C. Lewis, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Carmen Jacobsen, Special Agent, being duly sworn do hereby state that the following is true to my knowledge and belief:

## INTRODUCTION

1. I make this affidavit in support of an application for a search warrant in furtherance of a narcotics smuggling investigation conducted by the Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI"), for the following electronic devices seized from Elisa CASTRO-Alicea ("CASTRO") on July 9, 2019:

   (1) a black Alcatel cellular telephone
   Model No. 5094Z
   IMEI: 014940006345087
   (hereinafter **Target Device**)

2. The **Target Device** was seized from CASTRO on July 9, 2019 at the time of her arrest. It is believed that the **Target Device** was used by CASTRO to communicate with co-conspirators during a drug smuggling event involving methamphetamine within the Southern District of California, in S.D. Cal. Crim. Case No. 19mj2855-WVG. Probable cause exists to believe that the **Target Device** contains evidence relating to violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963. The **Target Device** is currently in the possession of HSI, located at 2297 Niels Bohr Court, San Diego, California 92154.

3. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I submit this Affidavit in support of the application to search the **Target Device** for and to seize the items set forth in Attachment B (incorporated herein) which I believe will be found in the item to be searched as described in Attachment A (incorporated herein).

4. The information contained in this affidavit is based upon my experience and training, and consultation with other federal, state, and local law enforcement agents. The

1

evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## EXPERIENCE AND TRAINING

5. I am a Special Agent with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), formerly the Immigration and Naturalization Service (INS) and have been so employed since June 1992. After being hired as a special agent in 1992, I received criminal investigative training at the Federal Law Enforcement Training Center ("FLETC"). As a result of my training and experience as a Special Agent, I am familiar with federal criminal statues to include violations of Titles 18, 19, 21, and 8 of the United States Code.

6. I am currently assigned to the HSI Office of the Deputy Special Agent in Charge ("DSAC"), San Ysidro located in Otay Mesa, California. I am cross-designated and have the authority to conduct Title 21 investigations and enforcement activities. I have been involved with investigations for Title 21 offenses and am familiar with the Interagency Cooperation Agreement between the U.S. Drug Enforcement Administration ("DEA") and ICE.

7. Based on my training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods utilized in drug trafficking operations and the unique trafficking patterns employed by drug trafficking organizations ("DTO"). I have participated in and conducted investigations of violations of various Federal criminal laws, including those related to narcotics violations. I am familiar with narcotics traffickers' methods of operation including the distribution, storage, and transportation of narcotics and the collection of money proceeds of narcotics trafficking. I regularly conduct investigations regarding the unlawful importation, possession, and distribution of controlled substances, as well as conspiracies associated with criminal

narcotics, in violation of Title 21, United States Code, §§ 952, 960 and 963. My training also included how cellular and digital telephones and other electronic devices are used by narcotics smugglers in the normal course of their illicit activities.

8. Based upon my training and experience as a special agent, and consultations with law enforcement officers experienced in narcotics trafficking and controlled substance manufacture and distribution investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a. Conspirators involved in the manufacture, distribution and importation of controlled substances will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

b. Conspirators involved in the manufacture, distribution and importation of controlled substances will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

c. Conspirators involved in the manufacture, distribution and importation of controlled substances and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

d. Conspirators involved in the manufacture, distribution and importation of controlled substances will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

e. Conspirators involved in the manufacture, distribution and importation of controlled substances will use cellular telephones because they can easily arrange to meet co-conspirators and or potential buyers at predetermined locations.

f. Conspirators involved in the manufacture, distribution and importation of controlled substances will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

      g.    Conspirators involved in the manufacture, distribution and importation of controlled substances often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

      h.    The use of cellular telephones by conspirators or drug smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

9. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

10. Based upon my training and experience as a special agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I have learned that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I have learned, through my training, education, and experience, that searches of cellular/mobile telephones associated with narcotics smuggling yield evidence:

      a.    tending to indicate efforts to memorialize the delivery of controlled substances and/or the importation of controlled substances, including, but not limited to: phone logs, messages, photos, contact lists, and financial records;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the manufacture, distribution, importation or delivery of methamphetamine, or some other federally controlled substance within the United States, or conspiracy thereof;

    c.    tending to identify co-conspirators, criminal associates, or others involved in the manufacture, distribution, importation or delivery of methamphetamine, or some other federally controlled substance within the United States, or conspiracy thereof;

    d.    tending to identify travel to or presence at locations involved in the manufacture, distribution, importation or delivery methamphetamine, or some other federally controlled substance within the United States, or conspiracy thereof, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## PROBABLE CAUSE

11. On July 9, 2019, CASTRO, attempted to enter the United States through the San Ysidro, California, Port of Entry (SYSPOE). CASTRO was the driver and sole occupant of a 2008 blue Honda CRV bearing California license plate no. 8KQS590. While in pre-primary, CASTRO was contacted by U.S. Customs and Border Protection (CBP) Canine Enforcement Officer Boswell in vehicle lane 12. CBPO Boswell's canine, "Kimi," alerted to the rear of the vehicle. After CASTRO provided CBPO Boswell with a negative customs declaration, she was escorted to the security office.

12. The vehicle was referred to secondary inspection for a more thorough inspection where CBPO Jones removed a total of 78 packages from CASTRO's vehicle, weighing approximately 36.62 kilograms. CBPO Lopez probed a random package and

extracted a substance that field-tested positive for the properties of methamphetamine. CASTRO was placed under arrest for the importation of a controlled substance.

13. Incident to arrest, agents seized the **Target Device**[1] from CASTRO.

14. Special Agent (SA) Carmen Jacobsen of Homeland Security Investigations was notified of the seizure and arrived at the POE. At approximately 7:42 a.m., CASTRO was advised of her *Miranda* rights. She elected to make a statement. She denied knowledge of the methamphetamine found in her vehicle.

15. Based upon my experience and investigation in this case, I believe that CASTRO as well as other persons currently unknown, were involved in an on-going conspiracy to facilitate the movement of narcotics into the United States and beyond. Further, based on my experience investigating narcotics traffickers, I believe that CASTRO used the **Target Device** to coordinate with co-conspirators regarding the manufacture, distribution and importation of federally controlled substances, and to otherwise further this conspiracy within the United States. I also believe that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Device** which may identify other persons involved in drug trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I further believe that information relevant to the drug trafficking activities of CASTRO such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device** described herein.

16. Finally, narcotics trafficking activities require detailed and intricate planning to successfully evade detection by law enforcement. In my professional training and experience, this requires planning and coordination in the days and weeks and often months prior to the

---

[1] Agents searched the **Target Device** at the port of entry on July 9, 2019. No information obtained from this search is being offered to support probable cause in this application.

event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. Given these facts, I respectfully request permission to search the **Target Device** for the period of January 9, 2019 up to and including July 9, 2019.

## METHODOLOGY

17.  It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18.  Following the issuance of this warrant, I will collect the **Target Device** and subject them to analysis. All forensic analysis of the data contained within the **Target**

7

**Device** and memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

20. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that CASTRO used the **Target Device** to facilitate the offense of importing methamphetamine. Further, the **Target Device** was likely used to facilitate the offense by transmitting and storing data, which is evidence of violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963.

21. Because the **Target Device** was seized during the investigation of CASTRO's smuggling activities and have been securely stored, there is probable cause to believe that evidence of illegal activities committed by CASTRO continues to exist on the **Target Device**. As stated above, I believe that the appropriate date range for this search is from January 9, 2019 up to and including July 9, 2019.

//
//
//
//
//
//
//
//

8

22.     Therefore, I respectfully request that the Court issue a warrant authorizing me, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A, and seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*(signature)*
Carmen Jacobsen, Special Agent
Homeland Security Investigations

Sworn to before me and subscribed in my presence
before me this ___23___ day of July, 2019

*(signature)*
HON. PETER C. LEWIS
United States Magistrate Judge

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The property to be searched in connection with an investigation of violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963, is described below:

(1) a black Alcatel cellular telephone
Model No. 5094Z
IMEI: 014940006345087



**Target Device** is currently in the possession of Homeland Security Investigations located at 2297 Niels Bohr Court, San Diego, California 92154.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of January 9, 2019 to July 9, 2019.

a. tending to indicate efforts to memorialize the delivery of controlled substances and/or the importation of controlled substances, including, but not limited to: phone logs, messages, photos, contact lists, and financial records;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the manufacture, distribution, importation or delivery of methamphetamine or some other federally controlled substance within the United States, or conspiracy thereof;

c. tending to identify co-conspirators, criminal associates, or others involved in the manufacture, distribution, importation or delivery of methamphetamine, or some other federally controlled substance within the United States, or conspiracy thereof;

d. tending to identify travel to or presence at locations involved in the manufacture, distribution, importation or delivery of methamphetamine, or some other federally controlled substance within the United States, or conspiracy thereof, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**which are evidence of violations of 21 U.S.C. §§ 841, 846, 952, 960, and 963**.

The seizure and search of the cellular phone(s) shall follow the procedures outlined in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phone(s) may be searched for the evidence above.